IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **RICK RHOADES,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| -VS- | § | CIVIL NO. 4:21-cv-02422 |
| | § | *CAPITAL CASE* |
| | § | |
| | § | |
| **HON. ANA MARTINEZ**, | § | |
| Defendant. | § | |
| | § | |

_____

**PLAINTIFF'S COMPLAINT FILED
PURSUANT TO 42 U.S.C. § 1983**

**Mr. Rhoades is scheduled to be executed
on September 28, 2021, after 6:00 pm.**

David R. Dow
Texas Bar No. 06064900
University of Houston Law Center
4604 Calhoun Rd.
Houston, Texas 77204-6060
Tel. (713) 743-2171
Fax (713) 743-2131
Email ddow@central.uh.edu

Jeffrey R. Newberry
Texas Bar No. 24060966
University of Houston Law Center
4604 Calhoun Rd.
Houston, Texas 77204-6060
Tel. (713) 743-6843
Fax (713) 743-2131
Email jrnewber@central.uh.edu

*Counsel for Rick Rhoades, Plaintiff*

i

# Table of Contents

Table of Authorities ..................................................................... iii

Table of Exhibits ........................................................................vi

PLAINTIFF'S COMPLAINT FILED PURSUANT TO 42 U.S.C. § 1983...............................................................................................1

Introduction.................................................................................1

Jurisdiction..................................................................................4

Venue.........................................................................................5

Parties........ ...............................................................................5

Procedural history.......................................................................5

Defendant's actions have violated Rhoades' rights under the Due Process and Equal Protection clauses with the consequence he has been deprived of a full and fair opportunity to develop his claim pursuant to *Batson v. Kentucky*. .............................................14

Claim for relief: Judge Martinez violated Rhoades' right to due process and equal protection by denying him what he is due under article 35.29 and what other similarly situated individuals have received: a decision on whether he demonstrated good cause for the disclosure of juror information. ..........................................17

Prayer for relief.........................................................................21

Verification ..............................................................................23

Certificate of Service.................................................................23

# Table of Authorities

## Cases

*Ayala v. Wong*,
  756 F.3d 656 (9th Cir. 2014) .......................................................... 18

*Boyd v. Newland*,
  467 F.3d 1139 (9th Cir. 2006) ........................................................ 17

*Connecticut Board of Pardons v. Dumschat*,
  452 U.S. 458 (1981) ........................................................................ 20

*District Attorney's Office v. Osborne*,
  447 U.S. 52 (2009) .......................................................................... 20

*Falcon v. State*
  879 S.W.2d 249 (Tex. App.—Houston [1st Dist.] 1994) ............... 12

*Gonzalez v. State*,
  No. AP-77,066, 2017 WL 782735 (Tex. Crim. App. Mar. 1,
  2017)…….................................................................................... 10

*Green v. State*,
  No. AP-77,088, 2020 WL 1540426 (Tex. Crim. App. Mar. 30,
  2020)………................................................................................ 10

*Heck v. Humphrey*,
  512 U.S. 477 (1994) .......................................................................... 5

*In re Green*,
  No. WR-62,574-05, 2015 WL 5076812 (Tex. Crim. App. Aug.
  26, 2015) .................................................................................... 12

*In re Middleton*,
  No. 04-15-00062-CR, 2015 WL 1004233 (Tex. App.—San
  Antonio Mar. 4, 2015, orig. proceeding) ......................................... 12

*In re Powell*,
No. 2-07-102-CV, 2007 WL 1649661 (Tex. App.—Fort Worth
June 7, 2007, orig. proceeding) ......................................................12

*In re Rhoades*,
No. WR-78,124-02, 2021 WL 2964454 (Tex. Crim. App. July
14, 2021) .......................................................................................13

*Jasper v. Thaler*,
765 F. Supp. 2d 783 (W.D. Tex. 2011)..........................................16

*Miller-El v. Dretke* (*Miller-El II*),
545 U.S. 231 (2005) ................................................................14, 15

*Reed v. Quarterman*,
555 F.3d 364 (5th Cir. 2009) .........................................................16

*Rhoades v. Davis*,
No. 4:14-cv-03152, 2016 WL 8943327 (S.D. Tex. July 20,
2016)……....................................................................................7

*Rhoades v. Davis*,
852 F.3d 422 (5th Cir. 2017) ...........................................................8

*Rhoades v. Davis*,
914 F.3d 357 (5th Cir. 2019) ...........................................................8

*Rhoades v. Davis*,
140 S. Ct. 166 (2019) ......................................................................8

*Rhoades v. State*,
934 S.W.2d 113 (Tex. Crim. App. 1996) ...................................6, 14

*United States v. Guerra-Marez*,
928 F.2d 665 (5th Cir. 1991) .........................................................15

**Statutes**

Tex. Code Crim. Proc. art. 35.29 ................................................................ 18

Tex. Gov. Code § 62.0132(f)

**Other Authority**

Act of May 22, 1993, 73d Leg., R.S., ch. 371, § 1 ................................... 18

S. Comm. on Crim. Justice, Bill Analysis, Tex. S.B. 270, 83d Leg., R.S. (2013)……. ...................................................................................... 19

### Table of Exhibits

Exhibit 1          Transcript of March 17, 2021 hearing

Exhibit 2          Transcript of March 26, 2021 hearing

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **RICK RHOADES,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| -VS- | § | CIVIL NO. 4:21-cv-02422 |
| | § | *CAPITAL CASE* |
| | § | |
| | § | |
| **HON. ANA MARTINEZ**, | § | |
| Defendants. | § | |
| | § | |

_____

**PLAINTIFF'S COMPLAINT FILED
PURSUANT TO 42 U.S.C. § 1983.**

## Introduction

1.     Plaintiff Rick Rhoades is scheduled to be executed by the

State of Texas on September 28, 2021. The State intends to carry out

this sentence in spite of the fact that Rhoades has been unable to

investigate, develop, or properly raise to any court his claim pursuant to

*Batson v. Kentucky*, 476 U.S. 79 (1986). He has been prevented from

developing and raising his claim because the State has denied him

access to the materials provided for by state law—materials which are

necessary to conduct the comparative juror analysis required by *Miller-El v. Dretke*, 545 U.S. 231 (2005). Rhoades has therefore been unable to provide any court with these materials, or even to see them for himself.

2.     An Assistant District Attorney for Harris County, Texas acknowledged his office possesses of a copy of these materials. He has indicated he will make them available to Undersigned Counsel only when ordered to do so by the Defendant, the state trial court (i.e., the Hon. Ana Martinez). The district attorney has indicated he believes he may release this information to Rhoades' attorneys only when ordered to do so in connection with a motion filed by Rhoades under Texas Code of Criminal Procedure Article 35.29. Rhoades has filed such a motion, which provides someone in Rhoades' position may obtain juror information contained in the juror questionnaires and cards developed at trial upon a showing of good cause.

3.     Accordingly, through counsel, Rhoades asked Judge Martinez to find there was good cause for the District Attorney's office to release the juror information to the undersigned. Notwithstanding the clear language of article 35.29, and notwithstanding that individuals in Rhoades' position commonly file actions under 35.29 that

are ruled on by the trial court, Judge Martinez refused to address the merits of the motion and determine whether Rhoades had shown good cause, thereby entitling him to the information under state law.

4.      As further provided by state law, Rhoades, acting through counsel, sought mandamus relief in the Texas Court of Criminal Appeals ("CCA"). Specifically, Rhoades asked the CCA to require that Judge Martinez determine whether good cause exists for Rhoades to have access to the juror information. With four judges dissenting, the CCA denied Rhoades leave to file the petition for writ of mandamus.

5.      By failing to give Rhoades what he is due under state law— i.e., a chance to prove there is good cause for him to have access to the materials needed to develop a claim pursuant to *Batson*—Judge Martinez has violated Rhoades' Fourteenth Amendment right to due process. Further, by failing to give Rhoades what others who are similarly situated have received, Judge Martinez violated Rhoades' Fourteenth Amendment right to equal protection.

6.      By seeking the relief prescribed by state law, i.e., a petition for writ of mandamus in the CCA, Rhoades has exhausted his state avenues for relief.

7.     Rhoades requests this Court issue an order declaring that Defendant's actions have violated his right to due process and equal protection, and that Rhoades is entitled to a decision regarding whether there is good cause for the juror information to be disclosed to him. Alternatively, Rhoades requests this Court hold that the U.S. Constitution requires that Rhoades be given access to the juror information so that he can develop his claim under *Batson* in accordance with the procedures endorsed by the Supreme Court in *Miller-El II.*

## Jurisdiction

8.     This court has jurisdiction under 28 U.S.C. §§ 1331, 1343, 1651, 2201, and 2202, and under 42 U.S.C. § 1983.

9.     The confidential juror information Rhoades seeks is essential to developing his claim under *Batson* and could demonstrate his right under *Batson* was violated, which would mean his conviction and death sentence are constitutionally infirm. Because, however, Rhoades does not seek in the present action to determine his *Batson* right was violated, and because success in this action alone is therefore not capable of demonstrating Rhoades's conviction is invalid, this action is

properly brought pursuant to section 1983. *Heck v. Humphrey*, 512 U.S. 477, 487 (1994).

## Venue

10.   Venue lies in this Court under 28 U.S.C. § 1391 because the Defendant resides in the Southern District of Texas.

## Parties

11.   Plaintiff Rhoades is currently incarcerated, under a sentence of death imposed by the 179th District Court of Harris County, at the Polunsky Unit of the Texas Department of Criminal Justice – Correctional Institutions Division at Huntsville, Texas. He is scheduled to be executed on September 28, 2021.

12.   Defendant Ana Martinez is the presiding judge of the 179th District Court of Harris County. She is being sued in her official capacity.

## Procedural history

13.   Rhoades was convicted of capital murder and sentenced to death in the 179th District Court on October 8, 1992.

14.   On September 1, 1996, Rhoades filed his direct appeal in the Court of Criminal Appeals ("CCA"), in which he raised, *inter alia*, a

claim pursuant to *Batson v. Kentucky*, 476 U.S. 79 (1986). Appellant's Br. 33-44, *Rhoades v. State*, No. AP-71,595 (Tex. Crim. App. Sept. 1, 1996).

15.    In his *Batson* claim, Rhoades argued that the State's use of peremptory strikes against Berniece Holiday and Gregory Randle were racially motivated and that the State had failed to articulate sufficiently race-neutral reasons for the exercise of the strikes. *Id.*

16.    On October 2, 1996, the CCA denied Rhoades relief, holding that the race-neutral reasons the State had provided were sufficient for the court to feel comfortable that a mistake had not been committed. *Rhoades v. State*, 934 S.W.2d 113, 124-25 (Tex. Crim. App. 1996). The Court did not compare the answers given by these jurors to the answers of potential jurors whom the State did not exercise challenges to remove. The CCA decision antedated the Supreme Court's decision in *Miller-El II*, which specifically held that a comparative analysis is necessary to resolving a claim under *Batson*.

17.    On March 31, 2015, Rhoades filed his federal habeas petition in this Court, raising, *inter alia*, a claim pursuant to *Batson*. Pet. Writ

Habeas Corpus 47-56, *Rhoades v. Stephens*, No. 4:14-cv-03152 (S.D.

Tex. Mar. 31, 2015), ECF No. 13.

18.    To have properly resolved the merits of Rhoades' *Batson*

claim, this Court should have compared the jurors who had been struck

by the prosecution to the other jurors who had not, but this comparison

was not possible because the record did not contain the necessary jury

information, including the juror cards and questionnaires at issue in

this Complaint.

19.    On July 21, 2016, this Court denied Rhoades relief and

granted Respondent's Motion for Summary Judgment, writing that

Rhoades had not shown that the state court's assessment of the State's

peremptory challenges used to remove Holiday and Randle from the

pool was unreasonable. *Rhoades v. Davis*, No. 4:14-cv-03152, 2016 WL

8943327, at *18-20 (S.D. Tex. July 20, 2016).

20.    On November 18, 2016, Rhoades filed an application for a

certificate of appealability ("COA") in the United States Court of

Appeals for the Fifth Circuit.

21.    On December 7, 2016, the Fifth Circuit appointed

undersigned attorney Dow to represent Rhoades. Until that day,

neither of the attorneys who currently represent Rhoades had represented him in any proceeding.

22.     The Fifth Circuit granted Rhoades a COA on his *Batson* claim (and other claims) on March 27, 2017. *Rhoades v. Davis*, 852 F.3d 422, 435-36 (5th Cir. 2017).

23.     Rhoades subsequently filed his appellate brief in the court of appeals on May 8, 2017. Pet'r-Appellant's Br., *Rhoades v. Davis*, No. 16-70021 (5th Cir. May 8, 2017).

24.     On January 28, 2019, the Fifth Circuit affirmed this Court's decision denying Rhoades relief, writing that the state court's decision regarding Rhoades' *Batson* claim was not unreasonable, largely because Rhoades was not able to present a thorough juror comparison (because the record did not contain the juror cards and questionnaires). *Rhoades v. Davis*, 914 F.3d 357, 383 (5th Cir. 2019).

25.     On October 7, 2019, the Supreme Court denied Rhoades' Petition for a Writ of Certiorari. *Rhoades v. Davis*, 140 S. Ct. 166 (2019).

26.    On January 21, 2021, the district attorney's office indicated it intended to ask the state trial court to enter an order scheduling Rhoades' execution.

27.    On February 3, 2021, Counsel sent an email to the Assistant District Attorney, asking whether his office had maintained copies of the juror questionnaires and cards from Rhoades' 1992 trial.

28.    On February 24, 2021, that attorney informed the undersigned that the district attorney's office had maintained a copy of the juror cards and some of the questionnaires from Rhoades' 1992 trial; however, that attorney also informed Counsel he would make the juror information available to Rhoades' attorneys only pursuant to a motion filed by Rhoades under article 35.29 of the Texas Code of Criminal Procedure.

29.    Accordingly, on March 10, 2021, Mr. Rhoades filed a motion pursuant to article 35.29, asking Judge Martinez to find good cause existed for his attorneys to be granted access to the information. Mot. for Release Conf. Juror Info., *State v. Rhoades*, No. 0612408 (179th Dist. Ct., Harris County, Tex. Mar. 10, 2021).

30.    Judge Martinez, however, did not issue an order on the motion resolving the question of whether Mr. Rhoades had demonstrated good cause. Instead, on March 17, the judge stated that she believed she lacked jurisdiction to consider the motion. Exhibit 1 (Transcript of March 17, 2021 hearing) at 16 ("you will have to file the proper vehicle to get this before the Court and at that moment, the Court will at least give you the juror cards redacted if you want to argue on the work product issue").

31.    It is clear—and indeed the district attorney has not disputed—that, under state law, the motion Counsel filed was precisely the correct vehicle by which to ask for access to the juror information. *See, e.g.*, *Green v. State*, No. AP-77,088, 2020 WL 1540426, at *1 (Tex. Crim. App. Mar. 30, 2020) ("Appellant should first present his request for the disclosure of this information to the trial court"); *Gonzalez v. State*, No. AP-77, 066, 2017 WL 782735, at *1 (Tex. Crim. App. Mar. 1, 2017) (same); *see also In re Rhoades*, No. WR-78,124-02, 2021 WL 2964454, at *1 (Tex. Crim. App. July 14, 2021) (Yeary, J., dissenting) ("This Court has held that a party seeking a good-cause disclosure

should present his request under the statute in the first instance to the convicting court.").

32.     On March 25, Counsel filed a motion asking Judge Martinez to reconsider her March 17 ruling. Mot. Recons., *State v. Rhoades*, No. 0612408 (179th Dist. Ct., Harris County, Tex. Mar. 25, 2021).

33.     The trial court convened a hearing on March 26. At this hearing, the district attorney did not contest Rhoades' argument that Judge Martinez had jurisdiction to act under article 35.29. Nevertheless, Judge Martinez again stated she believed she did not have jurisdiction to issue an order on the merits of Mr. Rhoades' motion raised pursuant to article 35.29. Exhibit 2 (Transcript of March 26, 2021 hearing) at 3-4 ("It is the Court's ruling that the Court does not have jurisdiction to make that determination on that matter and it is the Court's ruling today that the Court does not have jurisdiction to reconsider such request.").

34.     Believing Rhoades was entitled to a decision from the trial court on whether he had shown good cause for access to the juror information and that the trial court, in fact, had a ministerial duty to enter such an order, on April 26, 2021, Counsel sought relief from the

Texas Court of Criminal Appeals, by filing a motion for leave to file a petition for a writ of mandamus. Mandamus is the mechanism provided for by state law to address a trial court's action pursuant to article 35.29. *Falcon v. State*, 879 S.W.2d 249, 250 (Tex. App.—Hous. [1st Dist.] 1994, no pet.). In numerous cases, appellate courts have granted leave to file and subsequently addressed the merits of petitions for writs of mandamus contesting a trial court's decision pursuant to article 35.29. *See, e.g.*, *In re Middleton*, No. 04-15-00062-CR, 2015 WL 1004233 (Tex. App.—San Antonio Mar. 4, 2015, orig. proceeding); *In re Powell*, No. 2-07-102-CV, 2007 WL 1649661 (Tex. App.—Fort Worth June 7, 2007, orig. proceeding); *see also In re Green*, No. WR-62,574-05, 2015 WL 5076812, at *1 (Tex. Crim. App. Aug. 26, 2015) (ordering Respondent to reply to mandamus petition and holding it in abeyance pending response).

35.     Specifically, Rhoades' petition asked the CCA to order the trial court to reach the merits of Rhoades' motion for access to the juror information and determine whether he had presented good cause for such access.

36.     On July 14, 2021, the CCA denied the motion for leave to file

the petition without explanation. Four of the court's nine judges

dissented from this decision.

37.     In his dissenting opinion, which was joined by Judge

Richardson, Judge Newell indicated he believed the prudent course

would have been to ask the judge why she did not believe she had the

authority to rule on Rhoades' motion.

38.     In his dissenting opinion, which was joined by Judge Walker,

Judge Yeary indicated he believed that Judge Martinez's opinion that

she did not have jurisdiction to rule on Rhoades motion seemed

inconsistent with orders in other cases issued by the CCA. *Rhoades*,

2021 WL 2964454 at *1 (Yeary, J. dissenting). Judge Yeary indicated he

believed the trial court had a ministerial duty to act on Rhoades' motion

and wrote the court "should either grant leave to file the application

and order the convicting court to render a ruling, or at least file and set

the matter for a determination whether the convicting court is correct to

conclude it presently lacks jurisdiction over the motion." *Id.*

**Defendant's actions have violated Rhoades' rights under the Due Process and Equal Protection clauses with the consequence he has been deprived of a full and fair opportunity to develop his claim pursuant to *Batson v. Kentucky*.**

39.     As explained in greater detail above, on direct appeal, Rhoades raised a claim pursuant to *Batson*, complaining that two members of his venire—i.e., Berniece Holiday and Gregory Randle—had been wrongly excluded on the basis of their race.

40.     In October 1996, the CCA denied Mr. Rhoades relief on these claims (and all the other claims raised on direct appeal) and affirmed Rhoades' conviction and sentence.

41.     The CCA simply determined it believed the race-neutral explanations given by the State were "not whimsical" and on that basis denied Rhoades relief. *Rhoades*, 934 S.W.2d at 124-25.

42.     There is no evidence in the opinion, issued almost nine years before the Supreme Court handed down its opinion in *Miller-El v. Dretke*, 545 U.S. 231 (2005) (*Miller-El II*), that the CCA made any attempt to compare the questioning of these jurors with that of the others. In *Miller-El II*, however, the Supreme Court made clear that, in the typical case raising a *Batson* claim, a proper resolution of the claim requires such a comparative analysis.

14

43.    Of course, it was impossible for the CCA to conduct a comparative analysis, because the record did not include copies of the juror cards and questionnaires. It is not disputed that the CCA did not use these items to compare these excluded jurors from the jurors accepted by the State.

44.    In *Miller-El II*, the Supreme Court made clear that the analysis conducted by the CCA was not sufficient. *Miller-El* requires the Court to consider a comparative juror analysis in its review of a *Batson* claim. *Miller-El II*, 545 U.S. at 241.

45.    In *Miller-El II*, the Court relied upon statistics gathered of how many of the eligible African-American venire members had been peremptorily challenged by the prosecution and side-by-side comparisons of black venire panelists who were struck against white panelists allowed to serve. *Id*.

46.    The Court of Appeals for the Fifth Circuit has made clear that a person raising a *Batson* claim should include the comparative juror analysis required by *Miller-El II*. *United States v. Guerra-Marez*, 928 F.2d 665, 673 n. 9 (5th Cir. 1991).

47.     Additionally, the court of appeals has made clear that it is incumbent upon courts to conduct this type of analysis regardless of whether it is presented by a habeas petitioner. *Reed v. Quarterman*, 555 F.3d 364, 372-73 (5th Cir. 2009) ("We recently agreed that *Miller-El II* requires us to consider a 'comparative juror analysis' in a *Batson* claim."). Of course, in order for a court to conduct this analysis, the materials required to conduct the analysis must be contained in the record.

48.     In light of *Miller-El II* and the analysis it requires, it is simply not possible to properly analyze a *Batson* claim without the juror questionnaires and cards. *See, e.g.*, *Jasper v. Thaler*, 765 F. Supp. 2d 783, 816 n. 62 (W.D. Tex. 2011) ("A legitimate comparison of the prosecution's allegedly disparate treatment of the venire members would necessarily include review of the entire juror questionnaires to ascertain if, in fact, the venire members allegedly treated differently by the prosecution were, in fact, similarly situated. Such a review is not possible in this case because neither party has furnished this Court with the juror questionnaires.").

49.    This Court was not able to conduct the analysis required by

*Miller-El II* when it previously considered the merits of Rhoades' *Batson*

claim because the juror questionnaires and juror cards necessary to

conduct this review were not included in the records, through no fault of

Rhoades.

**Claim for relief: Judge Martinez violated Rhoades' right to due process and equal protection by denying him what he is due under article 35.29 and what other similarly situated individuals have received: a decision on whether he demonstrated good cause for the disclosure of juror information.**

50.    Plaintiff Rhoades realleges and incorporates herein by

reference the allegations contained in all the preceding paragraphs of

this Complaint.

51.    Rhoades has a due process right to materials necessary to

conduct the analysis fundamental to developing a *Batson* claim. *See*

*Boyd v. Newland*, 467 F.3d 1139, 1150 (9th Cir. 2006) ("Because we hold

that, under the clearly established Supreme Court precedent of *Batson*,

comparative juror analysis is an important tool that courts should

utilize on appeal when accessing a defendant's plausible *Batson* claim,

we must also conclude that all defendants . . . have a right to have

access to the tools which would enable them to develop their plausible

*Batson* claims through comparative juror analysis."); *see also Ayala v. Wong*, 756 F.3d 656, 671 n.10 (9th Cir. 2014), *rev'd by Davis v. Ayala*, 576 U.S. 25 (2015) ("If our dissenting colleague believes that jury questionnaires are not tools for comparative juror analysis, we point her to" *Miller-El II*.)

52.    Indeed, the Texas law contained in Article 35.29 of the Texas Code of Criminal Procedure recognizes that these materials are necessary to develop habeas claims for defendants sentenced to death in Texas and provides a means for obtaining them. *See* Tex. Code Crim. Proc. art. 35.29(c) ("The defense counsel may disclose information . . . to successor counsel representing the same defendant in a proceeding under Article 11.071 without application to the court or a showing of good cause.").

53.    When the Texas Legislature enacted Article 35.29 of the Code of Criminal Procedure in 1993, the legislature gave defendants like Rhoades a state-created right to a process by which they could obtain access to juror information. Act of May 22, 1993, 73d Leg., R.S., ch. 371, § 1 (codified at Tex. Code Crim. Proc. art. 35.29). Since that time, numerous individuals have filed motions pursuant to article

35.29, which motions have been ruled on by the trial courts. Numerous others have sought relief from decisions of the trial courts by filing mandamus petitions in the courts of appeals.

54.    In 2013, the legislature amended the statute in a way that recognized the need for this process to proceed expeditiously in the cases of individuals who have been sentenced to death.[1] S. Comm. on Crim. Justice, Bill Analysis, Tex. S.B. 270, 83d Leg., R.S. (2013) ("In post-conviction capital defense cases, post-conviction counsel must apply to the trial court for access to juror information. This process takes anywhere from one to two months on average and costs time and resources to the state.").

55.    The state-created right contained in article 35.29 invests Rhoades with a liberty interest in demonstrating the infirmity of his conviction using the information contained in the juror information at issue in this case. Although his right to the juror information under the statute is not absolute (because he must demonstrate good cause to earn its disclosure), his right to due process and equal protection does

---

[1] The 2013 amendment added subsection (c) which permits trial defense counsel to provide juror information to successor defense counsel without application to the court.

absolutely require that the trial court determine whether he has, in fact, demonstrated good cause.

56.     As the Supreme Court announced in *Connecticut Board of Pardons v. Dumschat*, 452 U.S. 458 (1981), and reiterated in *District Attorney's Office v. Osborne*, 447 U.S. 52 (2009), a "state-created right can, in some circumstances, beget yet other rights to procedures essential to the realization of the parent right." *Osborne*, 557 U.S. at 68 (*quoting Dumschat*, 452 U.S. at 463).

57.     If the trial court were to enter an order finding Rhoades had not demonstrated good cause for disclosure of the juror information, Rhoades could then appeal that decision to the CCA through a petition for a writ of mandamus. *See Falcon*, 879 S.W.2d at 250. Judge Martinez's refusing to decide whether Rhoades has demonstrated good cause (coupled with the CCA's refusing to require her to issue such a decision), however, has left Rhoades with no means by which to further pursue access to this juror information in the state courts.

58.     This Court should find that Rhoades has a due process and/or equal protection right to the process mandated by article 35.29 and that Judge Martinez's action in denying him that process by

refusing to issue a decision on the merits of his motion has violated his rights under the Fourteenth Amendment. Judge Martinez has deprived Rhoades of his liberty interest in utilizing state procedures to obtain a reversal of his conviction.

## Prayer for relief

WHEREFORE, Mr. Rhoades prays that the Court provide relief as follows:

59.    Issue a declaratory judgment that Rhoades is entitled to a decision on whether he has demonstrated good cause for access to the juror information; and/or, alternatively,

60.    Issue a declaratory judgment that Rhoades is entitled to access materials essential to determining whether his rights under *Batson* were violated at his trial; and

61.    Award Rhoades costs of suit and such other and further relief as this Court deems just and proper.

Respectfully submitted,

/s/ David R. Dow

_____

David R. Dow
Texas Bar No. 06064900
University of Houston Law Center
4604 Calhoun Rd.
Houston, Texas 77204-6060
Tel. (713) 743-2171
Fax (713) 743-2131
Email ddow@central.uh.edu

/s/ Jeffrey R. Newberry

_____

Jeffrey R. Newberry
Texas Bar No. 24060966
University of Houston Law Center
4604 Calhoun Rd.
Houston, Texas 77204-6060
Tel. (713) 743-6843
Fax (713) 743-2131
Email jrnewber@central.uh.edu

*Counsel for Rick Rhoades*

## Verification

I, Jeffrey R. Newberry, attorney for Mr. Rhoades in the above-entitled action, state that to the best of my knowledge and belief, the facts set forth in this Complaint are true.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 26, 2021.

/s/ Jeffrey R. Newberry
_____
Jeffrey R. Newberry

## Certificate of Service

I certify that a true and correct copy of the foregoing Complaint was served on Defendant via an email sent to Ana_Martinez@justex.net.

/s/ Jeffrey R. Newberry
_____
Jeffrey R. Newberry